DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Winthrop G. Gardner, an attorney licensed to practice law in the State of Louisiana.
The underlying facts were stipulated to by the parties, and involve several instances of conversion of client funds by respondent occurring between January of 1992 and February of 1993. More specifically, it appears respondent did not follow appropriate accounting practices in retaining funds for the payment of third parties, nor in disbursing settlement payments and other funds to his clients when due. The original C.P.A. report, written by Raymond C. Ladouceur, found that $30,468 of client and third-party funds were unaccounted for on February 28, 1993. Another C.P.A., William C. Potter, reviewed Mr. Ladouceur’s report and found he used standard, acceptable accounting practices to arrive at his conclusions. However, it was discovered that Mr. Ladouceur did not have complete access to respondent’s records and financial data when conducting his investigation. Mr. Michael Rice, another C.P.A. hired by respondent who had complete access to respondent’s records, indicated that the actual amount which was not accounted for was approximately $10,000. In response, Mr. Ladouceur agreed that if respondent’s explanations were taken to be true, this would in fact be the appropriate amount not accounted for.[1]
*1343 The parties agreed that despite respondent’s impropriety in conducting his financial affairs, all clients and third-parties have been paid, and no one has suffered any loss of funds.[2] However, it was also recognized that respondent’s delay in disbursements for unreasonable lengths of time has deprived his clients and other parties of the time value of their money, and that the commingling and conversion was caused by respondent’s reckless disregard of the standards of professional conduct and gross neglect of proper accounting and bookkeeping practices.[3]
Formal charges were initially filed against respondent on July 21, 1993. In January, 1994, respondent filed a motion for consent discipline, seeking a two and one-half years suspension, with one and one-half year of the suspension deferred and two years probation subject to conditions. The ODC concurred in the consent discipline, and the hearing committee and disciplinary board recommended adoption of the consent. However, this court rejected the proposed discipline. In re Gardner, 94-2802 (La. 12/9/94), 647 So.2d 1103. Thereafter, the matter was reassigned to a hearing committee, and a formal hearing was held on April 19, 1995.
The hearing committee found that respondent violated Rule 1.15 by commingling and converting his clients’ funds in at least 15 instances. Based on the stipulations of the parties, the hearing committee concluded that the consent discipline originally agreed upon should be imposed. Therefore, it recommended that respondent should be suspended from the practice of law for two and one-half years, with one year to be served and the remaining one and one-half years to be deferred, conditioned upon the successful completion of a two-year probation period following the suspension, subject to conditions.[4]
The disciplinary board concluded that respondent’s conduct is “at best gross negligence, at worst, knowing misconduct.” Furthermore, it noted respondent’s failure to remit the funds to third-party providers ex *1344 posed the clients to great risk of harm. The board noted that the baseline sanction under Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), for a pattern of conversion is a three year suspension. Weighing the aggravating and mitigating factors, and considering that the conduct exhibited gross negligence, but that in almost every instance clients were not deprived of their settlement funds, the board recommended the following sanctions:
1. If respondent provides proof to the Court and the Disciplinary Board within 90 days of the date this Recommendation is submitted to the Court that he has met all requirements to practice law, including but not limited to paying his bar dues and disciplinary assessment and meeting his CLE requirements, that he be suspended from the practice of law for a period of one year and that all costs of these proceedings be assessed to the Respondent; or
2. If respondent does not provide the proof as outlined in 1. above, that he be suspended from the practice of law for a period of 1 year and 1 day, and that all costs of these proceedings be assessed to the respondent.
Neither the respondent nor the ODC filed objections to the board’s recommendations. However, this court ordered the parties to submit briefs to this court, without oral argument, addressing the issue of whether the penalty recommended by the disciplinary board is appropriate under the facts of this case.[5]
In its brief, the ODC asserted there is no dispute that serious misconduct has occurred in this matter. It pointed out that respondent has been ineligible to practice law since August 16, 1996 based on his failure to comply with the CLE requirements.[6] Additionally, he became ineligible on September 2, 1997 for failure to pay dues. The ODC concluded that respondent’s failure to correct his CLE and dues deficiencies, even after being afforded an incentive to do so, demonstrates a lack of rehabilitation and remorse. Based on the aggravating and mitigating circumstances,[7] the ODC suggested a three year suspension is appropriate discipline under the facts of this case.
In his brief, respondent agreed that under Hinrichs, the facts of this case might justify a three year suspension in the absence of mitigating factors. However, he argues there are significant mitigating factors that should be considered. First, he points out that while he acted with gross negligence, there is no evidence he intended to cause harm. He notes he has made full and free disclosure to the disciplinary board. He contends he has established his good reputation and good moral character, and has demonstrated remorse by submitting a letter of apology to the board. Finally, he asserts that delay is a mitigating factor in this proceeding, since the charges date back to 1993. He contends he has done everything in his power to expedite matters by filing a petition for consent discipline. He concludes he has “stood ready to timely face and accept his punishment for the mistakes he had made,” but this has not happened. Based on these *1345 factors, respondent suggests that he be suspended from the practice of law for a period of two and one-half years, with all but one year deferred, conditioned on a two year probation with special conditions.
Upon review of the findings and recommendations of the hearing committee and disciplinary board, the record filed herein, and the additional briefing of the parties ordered by this court, we conclude an upward deviation in the sanction recommended by the disciplinary board is justified under these facts. As both sides point out, the baseline suspension for respondent’s misconduct, which involves multiple instances of commingling and conversion, is a three year suspension from the practice of law. Nonetheless, we recognize that there are certain mitigating factors in this matter.
Based on these considerations, we conclude a two year suspension from the practice of law, with six months of the suspension deferred, subject to a two year probation period with conditions, is appropriate discipline under these facts.

DECREE

For the reasons assigned, it is ordered that respondent, Winthrop G. Gardner, be suspended from the practice of law for a period of two years, with six months of that suspension deferred. It is further ordered that upon completing the active portion of the suspension, respondent be placed on two years probation, subject to the conditions recommended by the hearing committee. All costs of these proceedings are assessed against respondent.

 Kimball, J. not on panel. Rule IV, Part 2, § 3.

. Based on assumptions regarding fees collected and costs owed, Mr. Ladouceur originally concluded that respondent withheld $20,621 of client funds in order to pay third-party providers, primarily medical providers, which remained unpaid as of February 28, 1993. In his May 4, 1993 report, Mr. Ladouceur concludes that re *1343 spondent collected approximately $27,000 in settlement proceeds for a single case, which he did not distribute to the plaintiffs as of 2/28/93. Mr. Ladouceur finds respondent’s trust account balance should be $47,621, with a conversion of $30,468 of client funds as of February 28, 1993, leaving a balance of only $17,153.
However, after respondent’s C.P.A., Michael Rice, conducted his own review of respondent's financial records, Mr. Ladouceur submitted a supplemental report, in which he revised his findings. Mr. Ladouceur stated that the trust account balance on 2/28/93 should have been $27,373, and thus respondent converted or commingled $10,220 in funds due clients or third-party providers.

. In December, 1994, after the filing of formal charges, respondent made a payment of $9,669.16 in restitution at the direction of Mr. Rice.

. Mr. Ladouceur and Mr. Rice do not dispute that there were thirteen instances of commingling and converting clients’ funds that were withheld from settlements for payment of third-party providers. In two instances, respondent engaged in commingling and conversion of funds belonging to clients. On five occasions, funds withheld from settlements were not remitted to third-party providers until 20 months after the settlement; on three occasions, respondent waited 12 to 14 months; and on another three occasions, providers experienced a two to three month delay in receipt of payment. One of respondent's clients waited two and a half months before receiving her settlement funds.

.The conditions were:
1) He hire, at his expense, a C.P.A. to perform quarterly modified audits of his trust account and operating account, under the direction of disciplinary counsel following his suspension. The C.P.A. shall file written reports of the audits within 15 days of completion of the audit. The C.P.A. is obligated to report any and all questionable practices to disciplinary counsel.
2) Respondent shall successfully complete six (6) college credit hours of introductory accounting courses.
3) Perform community service by lecturing in an ethics course at each of the four Louisiana law schools on the pitfalls of improper control of attorney trust accounts.
4) New complaints during the probation period should be submitted directly to the Disciplinary Board for summary consideration as possible probation violations.
5) A complete and full restitution report should be compiled and submitted to the Disciplinary Board by respondent’s C.P.A.
6) Respondent shall maintain and perform all CLE requirements during his period of suspension;
7) Comply with Rule XIX, § 26 in providing closing letters to all appropriate parties prior to his year of suspension; and
8) Engage in no other misconduct whatsoever during the probationary period.

. Supreme Court Rule XIX, § 11(G)(1)(a) provides:
(a) No Objections. In the event no objections to the findings and recommendations of the disciplinary board are filed, the court may enter an order based on the recommended discipline with written reasons, which may be summary in nature. If the court determines that a different disposition may be appropriate, or for any other reason desires briefs or oral argument, the court will notify respondent and disciplinary counsel of the date for submission of briefs andjor oral argument, and may also designate the issue or issues which especially interest the court [emphasis added].

. Although respondent recently completed his 1995 requirements, he still must complete 15 hours for his 1996 requirement and pay a $100 reinstatement fee.

.The ODC contends there are five aggravating factors: (1) prior disciplinary offenses; (2) pattern of misconduct; (3) multiple offenses; (4) vulnerable victims; (5) substantial experience in the practice of law (respondent was admitted in 1983). It also found five mitigating factors apply: (1) absence of dishonest motive; (2) personal problems; (3) full disclosure to the disciplinary systems; (4) prior reputation; (5) remorse. It noted that delay in disciplinary proceedings, suggested as a mitigating factor by the disciplinary board, is not applicable since much of the delay was attributable to consideration of the consent discipline proposal submitted by respondent.