*298 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This attorney disciplinary proceeding arises from twenty-six counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Winthrop G. Gardner, an attorney licensed to practice in Louisiana, but currently suspended from practice.
UNDERLYING FACTS

Boutwell Matter

Thomas Boutwell owned a company known as Bank Card Systems of Louisiana, Inc. (“BCS”), a business which provides equipment which allows merchants to accept credit cards. BCS in turn had a business relationship with Merchant Payment Services (“MPS”) concerning the issuance and use of credit card machines.
In July 1993, Mr. Boutwell retained respondent to represent him in connection with a dispute with MPS. Respondent charged Mr. Boutwell a flat fee of $750, which Mr. Boutwell paid in three installments. This legal matter was resolved by respondent to Mr. Boutwell’s satisfaction.
Thereafter, in April 1994, Mr. Boutwell experienced additional problems with MPS. Mr. Boutwell contacted respondent, who agreed to represent him in the dispute. Mr. Boutwell agreed to pay respondent an initial retainer fee of $2,500, an additional $2,500 if litigation was necessary, and a contingency fee of one-third of any amounts recovered by respondent from MPS. Despite the presence of the contingency fee | ¡¡arrangement, there was no written employment contract between respondent and Mr. Boutwell.
Mr. Boutwell also retained respondent to represent him in connection with a matter involving one of Mr. Boutwell’s former employees, David Dixon. The parties agreed to an initial flat fee of $2,500 to handle the matter up to litigation and a contingency fee of one-third of any amount recovered by way of judgment or settlement. Again, the parties did not sign a written contract.
At some point, the parties discussed the possibility of obtaining a credit card on BCS’s corporate account in respondent’s name which respondent could use for litigation expenses. Mr. Boutwell agreed to obtain a credit card for respondent, but later testified it was his understanding the credit card would be used for litigation expenses and fees only, and he did not intend for respondent to use the card for personal expenses.
On July 1, 1994, Mr. Boutwell had an American Express credit card on BCS’s account issued in respondent’s name. During the eight-month period between July 1, 1994 and March 30, 1995, respondent charged a total of $38,894.14 in purely personal expenses on the credit card.[1]
*299 While respondent did not dispute these charges were his personal responsibility, he sought to offset some of the personal charges against legal fees* purportedly owed by Mr. Boutwell. Specifically, upon receipt of each monthly credit card bill, respondent would reimburse Mr. Boutwell for a portion of the charges, leaving the 13remainder of the bill for Mr. Boutwell to pay as an offset against respondent’s legal fees.[2] However, respondent provided no accounting or documentation supporting his legal fees.
After several months, Mr. Boutwell became concerned about the high balance on respondent’s credit card and respondent’s failure to provide an accounting of his legal fees. Mr. Boutwell did not close the American Express account, but wrote a letter to respondent and respondent’s wife asking that they stop using the credit card for their personal expenditures.[3]
In February 1995, respondent gave three checks to Mr. Boutwell, totaling more than $21,000, as reimbursement for respondent’s personal expenses charged on the American Express card. These checks (two of which were drawn on respondent’s client trust account) were returned for insufficient funds. As a result, Mr. Boutwell | retrieved the credit card from respondent in late February 1995, after respondent had already charged more than $7,500 that month.
On March 3, 1995, Mr. Boutwell discharged respondent and requested payment for the outstanding amount owed on the credit card. When respondent failed to fully cooperate, Mr. Boutwell filed the instant disciplinary complaint, alleging respondent owed more than $22,500 for the credit card expenditures. Mr. Boutwell also filed a complaint against respondent *300 with the district attorney’s office based on the worthless checks. Respondent ultimately entered into an agreement with the district attorney’s office whereby he made good on the checks and paid the February 1995 credit card bill of $7,544.62. Additionally, Mr. Boutwell retained counsel, who requested that respondent provide written itemized accountings to substantiate his numerous claims of legal fees and expenses. Again, respondent did not fully comply with the request.

Myles Matter

In March 1995, Delores Myles retained respondent to file an appeal on behalf of her son, who had been convicted of second-degree murder. Respondent and Ms. Myles agreed to a flat fee of $8,500; however, no written contract or other documentation exists concerning the fee. Ms. Myles paid respondent $2,215 over a period of time.
Thereafter, respondent did nothing in the case. Ms. Myles filed a complaint with the ODC. Respondent assured her he would file the appeal if she would withdraw the complaint. Although Ms. Myles withdrew her complaint, respondent failed to file the appeal. As a result, Ms. Myles was required to retain new counsel to file the appeal. Respondent failed to account for or refund the unearned fee.
| sBrumfield Matter
In January 1995, the New Orleans Pro Bono Project retained respondent to handle a redhibition case on behalf of Georgia Brumfield relative to her purchase of a house. Ms. Brumfield paid respondent $250 for court costs. Respondent filed suit on Ms. Brumfield’s behalf, but withheld service in an attempt to amicably resolve the matter.
Thereafter, Ms. Brumfield attempted to contact respondent by telephone on numerous occasions to discuss the status of her case, but had difficulty getting him to return her calls. In November 1995, opposing counsel made an offer to settle the case, but respondent never communicated this offer to his client. Approximately one year later, respondent made an offer of settlement to opposing counsel. It is unclear whether this offer was authorized by Ms. Brumfield. In any event, the matter was never resolved.

Warren Matter

In November 1996, Ester Lee Warren paid respondent $5,000 to represent her step-granddaughter, Kimberly Sims, in criminal proceedings involving charges of attempted first-degree murder and armed robbery. After being retained, respondent visited Ms. Sims in jail and discussed the matter on one occasion with the Washington Parish assistant district attorney assigned to the case.
Thereafter, respondent took no further action in the case. He never appeared on Ms. Sims’ behalf in a court proceeding, and the Washington Parish Public Defender’s Office represented Ms. Sims to the conclusion of the matter. Subsequently, respondent refused to return any portion of the fee paid by Ms. Warren.
1 sSmith Matter
In September 1996, Catherine Smith paid respondent $1,000 to file a suit against her nephew. After being retained, respondent took no action in the case. Respondent failed to perform any services for his client. Approximately eight months after his retention, Ms. Smith terminated his services.
Ms. Smith requested respondent return the $1,000 fee. He refused to do so, contending he earned the fee. Respondent has failed to render an accounting to Ms. Smith, nor has he provided any restitution.

*301
Burr Matter

Respondent represented Robert Burr in a personal injury matter. The case settled, and respondent withheld funds in the amount of $2,093 to pay Dr. Fred Miller for chiropractic services rendered to Mr. Burr.
Thereafter, respondent failed to pay the funds owed to Dr. Miller. As a result, Dr. Miller filed suit against respondent and Mr. Burr. Respondent agreed to pay the funds if the suit was dropped against his client. Dr. Miller agreed to drop his lawsuit against Mr. Burr. However, respondent filed for bankruptcy and did not pay the funds owed to Dr. Miller.

Moody Matter

Cynthia Moody approached respondent about representing her. Ms. Moody explained that a judgment had been rendered against her and her ex-husband and the judgment creditor had seized $3,500 in her saving account. Respondent agreed to represent Ms. Moody for a $500 flat fee. After being retained, respondent contacted |7the judgment creditor, but was unsuccessful in convincing him to release Ms. Moody from the judgment.
Subsequently, Ms. Moody requested a refund of the fee she paid to respondent. Respondent refused to account for the fee, as well as failed to place the disputed fees in trust.

Scottt-Gillespie Matter

In June 1996, Gayle Scott-Gillespie contacted respondent. She explained that when she left her former company, her business partner agreed to pay her $3,000 for her stock, but never followed through. She asked respondent to review her documents and write a letter to the company on her behalf. Respondent agreed to do so for a $250 fee.
While respondent reviewed the documents and contacted Ms. Scott Gillespie’s former employer, he did not write a letter on her behalf. Respondent further failed to keep Ms. Scott Gillespie properly informed regarding the status of her case, as well as failed to account for the unearned fee or place the disputed funds in trust.

Stewart Matter

In February 1997, Charlean Stewart retained respondent to defend her son in a criminal matter. She also requested respondent file a civil suit on her son’s behalf against the Franklinton Police Department. Ms. Stewart and respondent agreed to a $2,500 fee for the criminal representation and a one-third contingency fee arrangement for the civil suit. Ms. Stewart paid $500 of the $2,500 fee.
IsWhile respondent appeared at his client’s arraignment, he took no further action in the criminal case, nor did he file the civil suit. Respondent failed to account for his fee, nor did he refund the unearned portion of his fee.

Desvigne Matter

Respondent represented Janet Ann Des-vigne in a personal injury matter arising from an automobile accident. In August 1996, respondent settled a case on behalf of Ms. Desvigne in the amount of $40,000. Following the settlement, respondent disbursed $11,600 to Ms. Desvigne. Although respondent maintained he provided a detailed settlement statement to Ms. Des-vigne, he failed to produce any records supporting this assertion, despite being given additional time by the hearing committee to do so.

Bright Matter

Sandra Krick Bright retained respondent on September 5, 1992 to represent her in a contentious child custody matter. Between September 2, 1992 through January 28, 1993, Ms. Bright paid respondent legal fees in the amount of $4,000.
*302 On January 28, 1993, Ms. Bright discharged respondent on the ground that he neglected the matter and failed to communicate with her. Ms. Bright requested a refund of the unearned fee. Rather than refunding any portion of the fee, respondent sent Ms. Bright a statement reflecting an additional payment due in the amount of $2,153.28. However, respondent refused to provide an itemized accounting of his services.
| aVernon Matter
In March 1997, Rodney Vernon retained respondent to represent him in connection with a capital murder case. Mr. Vernon’s mother, Doretha Vernon, paid respondent approximately $5,000, which she and Mr. Vernon believed was respondent’s entire fee for handling the matter. Between March 1997 through October 1997, respondent made several court appearances and filed pleadings on Mr. Vernon’s behalf.
On December 1, 1997, respondent was suspended from the practice of law by this court. Respondent failed to advise Mr. Vernon of his suspension and failed to take measures to protect his interests.

Toomer Matter

In September 1997, Norma Jean Toomer retained respondent to represent her son in a juvenile- matter. Ms. Toomer and respondent agreed to a $2,500 flat fee, of which Ms. Toomer paid $1,100. With the exception of visiting his client on one occasion, respondent took no action in the case, resulting in the appointment of other counsel to handle the matter.
Respondent claimed to have withdrawn from the case because Ms. Toomer failed to pay the entire fee. Although respondent maintained he earned the $1,100 in fees paid by Ms. Toomer, he provided no accounting to substantiate this assertion.

Unauthorized Practice of Law

On August 16, 1996, respondent became ineligible to practice law based on his failure to satisfy the mandatory continuing legal education requirements. He has remained ineligible since that time. Respondent was given notice of his ineligibility by |inthe Louisiana State Bar Association. Nonetheless, respondent either assumed or continued representation of clients in the Myles, Warren, Smith, Moody, Scott Gillespie, Stewart, Desvigne, Vernon, and Toomer matters. In none of these cases did respondent advise his clients he was ineligible to practice law.
On October 17,1997, this court rendered an opinion suspending respondent from the practice of law for a period of two years, with six months deferred, subject to a two-year period of probation, stemming from the commingling and conversion of client funds. In re: Gardner, 97-1314 (La.10/17/97), 701 So.2d 1342. That suspension became effective on December 12, 1997, upon the denial of rehearing.
Following his suspension, respondent simply abandoned many of his clients’ cases and failed to take any measures to protect their interests. One of these clients included Rodney Vernon, who was the subject of capital murder proceedings.

Failure to Cooperate

Respondent failed to cooperate with the ODC in numerous disciplinary investigations stemming from complaints filed in the Myles, Warren, Smith, Burr, Moody, Scott Gillespie, Stewart, Desvigne, Bright, and Vernon matters. As a result, the ODC was required to issue subpoenas compelling respondent’s appearance and production of documents at scheduled depositions. In most instances, respondent avoided service of process. After being served, respondent failed to comply with the orders compelling his cooperation.
*303 ^DISCIPLINARY PROCEEDINGS

Formal Charges

In January 1997, the ODC filed formal charges against respondent in connection with the Boutwell matter, alleging violations of Rules 1.4 (failure to communicate), 1.5(c) (failure to obtain written contingency fee agreement), 1.8 (exploiting representation of a client), 1.15(b) (failure to deliver or account for property owed to client or third party), 1.15(c) (failure to keep property owned by client and third party separate from that of attorney and failure to place property subject to a dispute in trust), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.
When respondent failed to timely file a response, the charges were deemed admitted pursuant to Supreme Court Rule XIX, § 11(E)(3). Respondent filed a motion to vacate the deemed admitted order, which was denied. The matter therefore proceeded without a hearing. Upon the filing of the disciplinary board’s recommendation, this court concluded the hearing committee chair erred when he denied respondent’s motion to vacate. Accordingly, the matter was remanded for a formal hearing before the committee. In re: Gardner, 98-1476 (La.10/9/98), 719 So.2d 400.
On remand, the ODC supplemented and amended the formal charges against respondent to include an additional twenty-six counts of misconduct arising from the Myles, Warren, Smith, Burr, Moody, Scott-Gillespie, Stewart, Desvigne, Bright, Vernon, and Toomer matters. These charges alleged violations of Rules 1.1(b) (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.15(f)(3) (failure listo account for advance fee), 1.5(f)(6) (failure to place fees subject of dispute in trust), 1.15 (safekeeping and separation of client property in dispute), 1.15(c) (failure to keep property owned by client and third party separate from that of attorney and failure to place property subject to dispute in trust), 1.16(a)(1) (failure to withdraw from representation of client when the representation resulted in professional misconduct), 1.16(d) (failure to protect client interests upon termination of representation), 3.4(a) (unlawfully obstructing another party’s access to evidence or unlawfully altering, destroying or concealing a document or other material having potential evidentiary value), 3.4(c) (failure to comply with tribunal orders), 5.5(a) (engaging in the unauthorized practice of law), 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 9(c) (willful failure to comply with orders of a disciplinary agency).
Respondent filed an answer denying the allegations in the formal charges and asserting various affirmative defenses. The matter then proceeded to a formal hearing.

Recommendation of the Hearing Committee

The hearing committee heard testimony from several witnesses and received nu *304 merous documentary evidence. Respondent represented himself at the hearing and testified on his own behalf.
|13At the conclusion of the hearing, the hearing committee determined the ODC proved the allegations of the formal charges by clear and convincing evidence.[4] Specifically, the committee concluded respondent neglected numerous client matters, failed to communicate with his clients with regard to the status of their legal matters and his disciplinary infractions, engaged in a conflict of interest relative to the Boutwell matter, failed to properly withdraw from representations when necessary and to protect client interests at the termination of a representation, failed to account for and return unearned fees, commingled and converted. client and third party funds, failed to place disputed funds in trust, engaged in criminal and deceitful conduct, and failed to cooperate with the ODC, as well as failed to comply with subpoenas issued by the disciplinary agency.
As aggravating factors, the committee recognized respondent’s prior disciplinary record,[5] dishonest or selfish motives, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the misconduct, substantial experience in the practice of law (admitted 1983), and indifference to making restitution. The committee did not identify any mitigating factors. Accordingly, the committee recommended respondent be disbarred.[6]
| uNotice of Intent to Seek Permanent Disbarment
The matter was argued before the disciplinary board on June 25, 2001. On May 9, 2002, after argument but prior to the board’s issuance of its recommendation, the ODC filed a “Notice of Intent to Seek Permanent Disbarment and Recommendation of Same to Disciplinary Board.” In that notice, the ODC asserted that permanent disbarment was appropriate in this case. The motion was served on respondent, who did not oppose it.

Recommendation of the Disciplinary Board

With minor modifications, the disciplinary board concluded the record supported the factual findings of the hearing committee.[7] The board found respondent violated duties owed to his clients, the public, the legal system and the profession. It determined his actions were intentional and knowing, causing significant actual injury to his clients. Specifically, it noted that he neglected multiple client matters and his *305 failure to communicate with those clients, or in some instances actively misleading them into believing their work had been performed, unduly delayed his clients’ legal matters. Furthermore, it found respondent’s failure to return unearned fees and/or unexpended costs deprived his clients of their money. The board maintained respondent’s failure to pay a third party medical provider with funds withheld for that purpose exposed the respective client to the risk of being held liable for those expenses and wrongly deprived the third party of funds due him. Finally, as to the Boutwell matter, it noted respondent’s failure to make timely reimbursements for more 11Rthan $20,000 in personal American Express charges negatively impacted the financial affairs of his client. The board found respondent’s failure to cooperate in the disciplinary investigation of the multitude of complaints filed against him caused injury to the legal profession, as well as unjust delays and' additional burdens upon the disciplinary system.
The disciplinary board adopted the aggravating factors cited, by the hearing committee, and agreed there were no mitigating factors presént. Relying on the record, the ABA’s Standards for Imposing Lawyer Sanctions, prior jurisprudence from this court, and the presence of the numerous aggravating factors, the board recommended respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In. re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Turning first to the Boutwell matter, we find the record demonstrates respondent took advantage of his attorney-client relationship with Mr. Boutwell to finance a Impersonal “shopping spree” of almost unimaginable proportion. Respondent’s defense was that although Mr. Boutwell paid for respondent’s personal charges, these payments were an offset against legal fees which Mr. Boutwell owed to respondent. However, respondent failed to produce any contemporaneous accounting which would have supported his assertions that additional fees were owed.
While,respondent provided some restitution to Mr. Boutwell, his. efforts may be described as incomplete at best. On several occasions, respondent gave Mr. Bout-well checks which were returned for insufficient funds. Mr. Boutwell was forced to refer the matter to the district attorney’s office, and only after that office became involved did respondent reluctantly provide additional reimbursement.
Rule 1.8 of the Rules of Professional Conduct provides that a lawyer “may not exploit his representation of a client ... to the client’s disadvantage.” We believe the instant case offers an illustration of precisely the type of the conduct this rule was intended to prohibit. Respondent deliberately ignored the professional rules intended to protect clients, such as the re *306 quirement of a written contingency fee agreement under Rule 1.5(c), and instead engaged in a course of dishonest conduct designed to coerce his client into paying legal fees unsupported by a legitimate accounting. Given this evidence, we must conclude the charges brought by the ODC in the Boutwell matter are supported by clear and convincing evidence.
We now turn to an analysis of the remaining charges. While the Myles, Warren, Smith, Burr, Moody, Scott-Gillespie, Stewart, Desvigne, Bright, Vernon, and Toomer matters contain different facts, they involve common elements of neglect of client matters and failure to account for or return unearned client funds resulting in conversion of those funds. The undisputed evidence in the record further demonstrates respondent practiced law after being declared ineligible to do so and |17failed to cooperate with the ODC during its investigation. Accordingly, we find all these charges have been proven by clear and convincing evidence.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is clearly serious in nature. He has exhibited a complete disregard for his clients’ welfare as well as the authority of this court. His actions caused harm to his clients, many of who were indigent and/or incarcerated, by depriving them of their funds and jeopardizing their legal matters. The baseline sanction for this misconduct is unquestionably disbarment.
Numerous aggravating factors are present, including respondent’s prior disciplinary record, dishonest or selfish motives, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the misconduct, substantial experience in the practice of law, and indifference to making restitution. We are unable to identify any mitigating factors from the record.
Considering these facts, we have no doubt that respondent must be disbarred. Haying determined that respondent must be disbarred, the only remaining question is |1swhether the nature of respondent’s misconduct is so reprehensible that he should be permanently prohibited from being readmitted to the practice of law.
In Appendix E to Supreme Court Rule XIX, we provided guidelines illustrating the type of conduct which might warrant permanent disbarment. These guidelines were not intended to bind this court in its decision-making, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.” Guideline 1 applies to “repeated or multiple instances of intentional conversion of client funds with substantial harm.”
While the facts of the Boutwell matter are different from the typical conversion case seen by this court, the net effect of respondent’s actions was to convert funds belonging to Mr. Boutwell to respondent’s *307 own use. The record reveals respondent deprived Mr. Boutwell of a significant amount of funds for a lengthy period of time, creating substantial harm. Likewise, respondent’s failure to account for and refund unearned fees paid by his other clients resulted in a conversion of those funds to the detriment of his clients. Therefore, we find respondent’s conduct falls within the scope of this guideline.
We do not lightly impose permanent disbarment. Nonetheless, we are firmly convinced that we would be derelict in our constitutional duty to regulate the practice of law if we did not impose that sanction under the instant facts. Respondent’s actions demonstrate he lacks the requisite moral fitness to practice law in this state. Respondent has disregarded and ignored his obligation to uphold the high standards of honesty and righteousness that he assumed when he took the oath as a member of the bar of this state. Louisiana State Bar Ass’n v. Hay Ion, 250 La. 651, 198 So.2d 391, 392 (1967). He has used his law license not to foster the high standards of the |19profession, but to exploit his clients for his own benefit. This court cannot and will not tolerate such conduct. He must be permanently disbarred from the practice of law.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that the name of Winthrop G. Gardner, Louisiana Bar Roll number 1903, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Thomas Carpenter, a certified public account retained by the ODC, reviewed the American Express statements from July 24, 1994 through March 29, 1995. He reviewed a total of 542 charges totaling $38,894.14. Of those, he concluded 524 charges totaling $38,095.64 were personal in nature and could not be characterized as litigation expenses. *299 He characterized 18 charges totaling $798.50 as "possible" litigation expenses, but noted none of the charges were obviously related to litigation costs. Based on evidence adduced at the hearing, the hearing committee made a finding of fact that all of the charges were personal in nature.

. The following chart indicates the amount of respondent's monthly personal credit expenditures and payments, as well as the balances satisfied by Mr. Boutwell allegedly representing respondent’s legal fees:
Month Amount of Bill Respondent's Payment Balance/Alleged Legal
Fee
July 1994 $3,227.08 $ 624.38 $2,000.00
August 1994 3,291.40 2,000.00* 1,291.40
September 1994 4,763.00 3,200.00 1.154.43
October 1994 2,784.00 1,734.00 1,050.84
November 1994 3,668.14 2,513.71 1.515.43
December 1994 7,035.27 6,614.00 421.27
January 1995 5.585.62 5,585.62*
15,500.00*
February 1995 7.544.62 7,544.62 ^
March 1995 993.94

 Respondent’s checks for payments were returned for insufficient funds.

 Respondent made payment five months after the amount was due, admittedly because of pressure imposed by the Orleans Parish District Attorney’s Office as a condition to the dismissal of criminal charges arising from the issuance of the worthless checks.

. Mr. Boutwell later testified that while he was aware respondent was charging personal expenses on the credit card, he was apprehensive about canceling the account because he felt “it was best to hang in there and try to see this thing through on the litigation than cause a big friction....” He believed that if he canceled the account, “I would have probably not collected the money on the account because of the way I felt Respondent was doing business.”

. Although the committee concluded there was insufficient evidence to support the charges in the Moody matter, the disciplinary board determined this finding represented legal error. Specifically, the board found the record supported the conclusion that respondent violated Rule 1.5(f)(6) and Rule 1.15(c) by failing to deposit the disputed fees in his trust account pending an accounting.

. In addition to his suspension for misappropriation of client funds in In re: Gardner, 97-1314 (La. 10/17/97), 701 So.2d 1342, respondent was admonished in 1995 for improperly endorsing his client’s signature on a check and was admonished in 1993 for failing to render an accounting in a contingency fee case.

. The committee recommended discipline for each count of the formal charges separately. As a result, it did not recommend disbarment for all counts. However, because disbarment necessarily subsumes any lesser sanction, the recommendation for discipline as a whole is for disbarment.

. As noted earlier, the disciplinary board concluded the hearing committee erred in finding no professional violations in the Moody matter.